IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| VICTORIA ROSE, professionally known as TORI ROSE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. _____ ) |
| 4747 ENTERTAINMENT, LLC, and BERRIS BOLTON, | ) ) ) |
| Defendant. | ) ) |

# COMPLAINT

Plaintiff Victoria Rose, p/k/a Tori Rose ("Ms. Rose" or "Plaintiff") file this action against 4747 Entertainment, LLC ("4747") and Berris Bolton ("Bolton") (collectively "Defendants") to protect her valuable intellectual property rights and states as follows.

## PARTIES

1. Plaintiff Tori Rose an individual who resides in Davidson County, Tennessee.

2. Defendant 4747 is a limited liability company organized under the laws of the State of Illinois. Upon information and belief, its sole member is Berris Bolton, a citizen and resident of the State of Illinois. Mr. Bolton is 4747's registered agent for service of process, and he may be served at 111 Stephens Street, Matteson, IL 60443. 4747 was administratively dissolved by the Illinois Secretary of State on July 12, 2024.

3. Defendant Bolton is an individual and a resident of the State of Illinois.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Ms. Rose's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendants because they have availed themselves of the forum state and because their conduct which gives rise to Ms. Rose's claims has been directed at this forum state.

6. Venue for this action is proper under 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions that give rise to Ms. Rose's claims occurred in this judicial district.

## FACTS

7. Ms. Rose is a Nashville-based singer and songwriter.

8. 4747 holds itself out to be a company that provides "artist development, writing, recording, marketing and producing services".

9. Bolton is a Grammy nominated producer and the owner of 4747.

10. In or around the fall of 2021, Ms. Rose entered into negotiations with 4747 for it to provide artist development services to her.

11. As a result of these negotiations, the parties circulated a draft agreement titled "Artist Development, Recording, Producing and Sound Recording Agreement" (the "Draft Agreement"). A true and correct copy of this Draft Agreement is attached hereto as **Exhibit A**.

12. Because Ms. Rose was a minor at the time the parties negotiated the Draft Agreement, her parents—William Albert Muntan and Kyra Rachel Muntan—were contemplated to be signatories to the Draft Agreement. (*See generally* Ex. A).

13. No party ever executed or signed the Draft Agreement.

14. Pursuant to the Draft Agreement, 4747 was to provide a litany of artist services to Ms. Rose, including:

- Write & record in collaboration with Artist 20 records
- Mix and Master 20 records
- Development (i.e., stage performance, build her show performance)
- Develop Social Media Branding
- Assign Content Management for Social Media
- Have at least 5 scheduled days per month in Studio with team
- Shoot 3 Music Videos
- Bring in Recording Musicians for records
- Create EPK for Artist
- Song Releases
- Studio Cost
- Videographer on sight [sic]

(*See id.*, ¶ 2).

15. In connection with the foregoing, 4747 was to additionally "provide Artist studio time sufficient to fully record original sound recordings[.]" (*See id.*, ¶ 2).

16. The goal of this endeavor was clear: 4747 was to seek to procure "a third party recording or distribution agreement for national distribution of Artist's recorded Masters with a so called 'Major Label'[.]" (*See id.*, ¶ 1(b)).

17. The Agreement contemplated joint ownership of the Master sound recordings and a 50/50 revenue split between Ms. Rose and 4747 in the event of their success. (*See id.*, ¶¶ 6, 7).

18. In addition to this revenue split, Ms. Rose (and her parents) were to pay 4747 a total of $200,000—$100,000 upon execution of the agreement and the remaining $100,000 split over 11 equal monthly payments.

19. Despite the fact that no party ever executed the Draft Agreement, Ms. Rose and her parents paid the $100,000 to Bolton.

20. In addition to this initial payment, Ms. Rose and her parents additionally paid Bolton $78,000 in connection with the services that he was supposed to provide to Ms. Rose.

21. Despite the foregoing, 4747 failed to meaningfully perform any services, whether contemplated in the Draft Agreement or otherwise, in connection with Ms. Rose's entertainment career.

22. While there had been early dialogue and discussion between the parties related to the services contemplated by the Draft Agreement, 4747 and Bolton have since ceased all communications with Ms. Rose and her parents.

23. As a result of the parties' initial dialogue, and upon information and belief, 4747 and Bolton mixed and mastered four (4) sound recordings embodying performances by Ms. Rose: (1) "Silent", (2) "Just Go", (3) "Seventeen", and (4) "On Your Toes".

24. In addition to these sound recordings, upon information and belief, 4747 and Bolton performed work on and partially completed six (6) other sound recordings. Collectively, these ten (10) sound recordings are referred to herein as the "Unauthorized Masters."

25. Despite the foregoing, 4747 and Bolton have refused to deliver the Unauthorized Masters to Ms. Rose, and they continue to exercise control over the Unauthorized Masters.

26. In addition to the foregoing, 4744 and Bolton released two of the Unauthorized Masters, "Seventeen" and "Just Go", to the public via online distributions on Spotify, and upon information and belief, other Digital Service Providers. Defendants did not discuss any of the foregoing with Ms. Rose or her parents prior its decision to unilateral release the Unauthorized Masters.

27. Prior to the initiation of this case, Ms. Rose, through counsel, has successfully removed the unauthorized distribution of these two Unauthorized Masters through takedown notices issued pursuant to the Digital Millennium Copyright Act. *See* 17 U.S.C. § 512.

28. Ms. Rose was the sole author of the sound recordings in the Unauthorized Masters and she was the only person to perform on these recordings.

29. Further, and with one exception, Ms. Rose was the sole author of the musical compositions, which were embodied on the Unauthorized Masters. Ms. Rose was a joint author of the musical composition "Silent".

30. Ms. Rose, through counsel and her management attempted to discuss the release of the Unauthorized Masters with Defendants but to date, they have been nonresponsive.

31. To the extent that Bolton and/or 4747 has generated any income or revenue as a result of its exploitation of the Unauthorized Masters, it has not accounted to or shared any such revenue with Ms. Rose.

**COUNT I**
**DECLARATORY RELIEF**
**NO AGREEMENT**

32. Ms. Rose restates the allegations contained in the foregoing paragraphs as if set forth fully herein.

33. A substantial controversy exists between Ms. Rose on the one hand and Defendants on the other, as to whether the Draft Agreement contemplates a binding and enforceable contract between the parties, and if so, the relative rights, obligations, and duties of each party, including with respect to copyright interests discussed herein.

34. A declaration by the Court would terminate the controversy between Ms. Rose and Defendants.

35. This Court has the power to declare the rights, status, and other legal relations between the parties pursuant to 28 U.S.C. § 2201, *et seq.*

36. Ms. Rose seeks a declaration that the unsigned Draft Agreement does not constitute a valid and enforceable contract, and that it does not serve to transfer any copyright interest or other interests or rights to 4747 or Bolton, individually.

## COUNT II
### DECLARATORY RELIEF
### COPYRIGHT AUTHORSHIP & OWNERSHIP IN SOUND RECORDINGS

37. Ms. Rose restates the allegations contained in the foregoing paragraphs as if set forth fully herein.

38. A substantial controversy exists between Ms. Rose, on the one hand, and Defendants on the other, as to whether Ms. Rose is the sole author and owner of the sound recording copyrights in the Unauthorized Masters.

39. A declaration by the Court would terminate the controversy between Ms. Rose and Defendants.

40. This Court has the power to declare the rights, status, and other legal relations between the parties pursuant to 28 U.S.C. § 2201, *et seq*.

41. Ms. Rose seeks a declaration that she is the sole author, owner, and qualified copyright claimant of the sound recording copyrights in the Unauthorized Masters.

## COUNT III
### DECLARATORY RELIEF
### COPYRIGHT AUTHORSHIP & OWNERSHIP IN MUSICAL COMPOSITIONS

42. Ms. Rose restates herein the allegations contained in the foregoing paragraphs as if set forth fully herein.

43. A substantial controversy exists between Ms. Rose on the one hand and Defendants on the other, as to whether Ms. Rose is the sole author and owner, except for the composition

6

"Silent" of which she is a joint author and owner, of the musical compositions embodied in the Unauthorized Masters.

44. A declaration by the Court would terminate the controversy between Ms. Rose and Defendants.

45. This Court has the power to declare the rights, status, and other legal relations between the parties pursuant to 28 U.S.C. § 2201, *et seq*.

46. Ms. Rose seeks a declaration that she is a sole author, owner, and qualified copyright claimant of the musical compositions copyrights embodied on the Unauthorized Masters except for "Silent". With respect to "Silent", Ms. Rose seeks a declaration that she is a joint author and owns one hundred percent (100%) of her particular authorship interest in and to that musical composition, which is indivisible.

47. Ms. Rose further seeks a declaration from this Court that neither 4747 nor Bolton, individually, have any rights, interest, or title in the foregoing musical composition copyrights, except for any interest that they may have in Ms. Rose's unclaimed interest in the composition "Silent".

## COUNT IV
## UNJUST ENRICHMENT

48. Ms. Rose restates herein the allegations contained in the foregoing paragraphs as if set forth fully herein.

49. As set forth above, Ms. Rose has conferred a benefit upon Defendants by payment of $178,000 to them despite no contractual obligation to do so. Defendants were aware of these benefits, has clearly benefited from them, and continues to benefit from them, all to Ms. Rose's detriment.

50. Defendants have accepted and retained these benefits under circumstances that would make it unfair and unjust for them to continue to retain them without fair and just payment of their value to Ms. Rose.

51. Under the circumstances described herein, it would be inequitable for Defendants to retain such ill-gotten benefits without paying Ms. Rose the value of those benefits.

52. As a result of Defendants' foregoing failures to provide any services to Ms. Rose, they have been unjustly enriched thereby.

53. Defendants are liable to pay and transfer said funds to Ms. Rose.

54. Ms. Rose is entitled to, and requests, judgment against Defendants for her damages, together with pre-judgment and post-judgment interest, costs, imposition of a constructive trust, and other just and proper relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Rose respectfully prays that the Court enter judgment against the Defendants as follows:

1. That the Court enter a Declaratory Judgment in favor of Ms. Rose, and against Defendants, decreeing as follows:

    a. That the Draft Agreement does not represent a valid and enforceable contract;

    b. That she is the sole author and owner of the sound recording copyrights found in the Unauthorized Masters;

    c. That, except for "Silent", she is the sole author and owner of the musical composition copyrights embodied in the Unauthorized Masters;

d. That, with respect to the musical composition for "Silent", that she is a joint author and owner of one hundred percent (100%) of her particular authorship interest in and to that musical composition, which is indivisible;

e. That, except for "Silent", she is the only qualified copyright claimant with respect to the musical compositions, under 37 C.F.R. § 202.3(a)(3);

f. That, with respect to the musical composition for "Silent", she is a qualified copyright claimant, under 37 C.F.R. § 202.3(a)(3);

g. That she is the only is a qualified copyright claimant with respect to the sound recordings, under 37 C.F.R. § 202.3(a)(3);

2. That Judgment be entered against Defendants for a sum to be determined in the accounting, together with prejudgment and post-judgment interest, as provided by law;

3. That the Court award Ms. Rose her costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

4. That the Court provide Ms. Rose with such other and further relief as the Court deems just and equitable.

Dated: October 24, 2024

Respectfully submitted,

**BUCHALTER, A PROFESSIONAL CORPORATION**

*/s/ Jacob T. Clabo*
Jacob T. Clabo, Esq., (TN Bar No. 36760)
1 Music Circle South, Suite 300
Nashville, TN 37203
P: (615) 329-4440
F: (615) 329-4485
jclabo@buchalter.com
*Counsel for Plaintiff Tori Rose*